UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

FACTORY MUTUAL INSURANCE CO.
and ENERGY INSURANCE MUTUAL

    Plaintiffs,

v.                                                    Case No. 1:09-CV-113

APCOMPOWER, INC.                            HON. GORDON J. QUIST

    Defendant.
_____/

**OPINION**

Defendant, APComPower, Inc. (AP), has moved to disqualify Plaintiffs', Factory Mutual Insurance Company and Energy Insurance Mutual (collectively "FM"), attorney and law firm. The Court heard oral argument on the motion on May 19, 2009, and on May 20, 2009, ordered the parties to file supplemental briefs on whether Allianz (AP's liability and property insurer) waived any conflict of interest when it allegedly continued discussions with and provided confidential information to Todd Denenberg (Denenberg) of Denenberg Tuffley after having been informed that Denenberg's firm was already representing FM regarding the same accident. Pursuant to that Order, the parties have submitted their supplemental briefs, and the Court is fully advised on the matter.

ANALYSIS

**A.    General Principles Pertaining to Disqualification**

Three requisites must be met to disqualify an attorney: 1) the party seeking disqualification had a past attorney-client relationship with the attorney it seeks to disqualify; 2) the subject matter

of that relationship is substantially related to the instant case; and 3) the attorney acquired confidential information from the party seeking disqualification. *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990). However, disqualification is a "drastic" remedy and should not be employed lightly. *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992); *Quicken Loans v. Jolly*, No. 2:07-CV-13143 2008 WL 2566373 at *2 (E.D. Mich. June 24, 2008).

> MRPC 1.9 governs conflicts of interests between current and former clients. It states:
>
> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.
>
> (b) Unless the former client consents after consultation, a lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated has previously represented a client
>
>> (1) whose interests are materially adverse to that person, and
>>
>> (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter.
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
>> (1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known; or
>>
>> (2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

MRPC 1.9. FM argues that this rule is inapplicable because AP was never a former client of Denenberg or his law firm. This argument is unavailing. Courts recognize that prospective clients who meet with an attorney but do not retain the attorney are entitled to at least some of the

2

protections afforded former clients.

The Sixth Circuit recognizes that "[w]hen a potential client consults with an attorney, the consultation establishes a relationship akin to that of an attorney and existing client." *Banner v. City of Flint*, 99 Fed. App'x 29, 36 (6th Cir. 2004); *see also Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir. 1978). Attorneys are bound by the attorney-client privilege and the duty of confidentiality in those circumstances. *Id*. Thus, the fact that Denenberg was never actually retained does not bar AP's motion.

The ABA recognized that Rule 1.9 of the Model Rules of Professional Conduct did not adequately address an attorney's duties to prospective clients who did not retain him. It formulated Rule 1.18 in 2000 to clarify this question. Michigan has not (yet) adopted Rule 1.18. Rule 1.18 provides:

> (a) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
>
> (b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.
>
> (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).
>
> (d) When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:
>
>> (1) both the affected client and the prospective client have given informed consent, confirmed in writing, or:
>> (2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than

was reasonably necessary to determine whether to represent the prospective client; and

> (i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
> (ii) written notice is promptly given to the prospective client.

ABA Mod. Rules Prof. Cond. Rule 1.18.

In *Laryngeal Mask Co. Ltd. v. Ambu A/S*, No. 07-CV-1988-DMS (NLS) 2008 WL 558561 (S.D. Cal. Feb. 25, 2008), the court disqualified an entire law firm from representing the defendants because one of its attorneys had a preliminary meeting with the plaintiffs regarding the same matter. The *Laryngeal Mask* court wrote that "[i]t is well established that a lawyer's fiduciary obligations exist even in the earliest stages of the relationship" and noted that "[t]here are not many disqualification cases analyzing preliminary consultations, but the California rule is consistent with the approach taken by other jurisdictions." *Id*. at *3-4. "The primary concern is whether and to what extent the attorney acquired confidential information." *Id*. at *3. The parties disagreed on whether plaintiffs shared confidential information with the attorney. Plaintiffs stated they described the background of their patent infringement dispute, reviewed their claim construction, showed the attorney their invention and the infringing product, and discussed various documents that had been submitted to the PTO. *Id*. at *2. The attorney insisted the dispute was "a meet and greet session to aid [plaintiffs] in shopping for potential counsel," that he received no confidential information, and that he gave the plaintiffs no legal advice. *Id*. at *2. The *Laryngeal Mask* court stated that the meeting must have gone "beyond 'initial or peripheral contacts'" to justify disqualification. *Id*. at *4 (quoting *Trone v. Smith*, 621 F.2d 994, 1000 (9th Cir. 1980)). The court reviewed the evidence and concluded that although "certain statements were matters of public record or concerned issues

that would become moot upon filing the lawsuit and the required initial disclosures, [there were] specific, narrow confidences [disclosed] that could give [defendants] a strategic advantage." *Id.* at *6.

In this Court's judgment, disqualification pursuant to a prospective client relationship falls under essentially the same rubric as disqualification pursuant to a former client relationship, with one exception. Although Michigan has not adopted Rule 1.18 of the ABA Model Rules, the similarities of ABA Model Rule 1.18 and MRPC 1.9 suggest that Rule 1.18 espouses the same principles as MRPC 1.9. Rule 1.18(c) restricts an attorney's representation of a party with interests materially adverse to those of a prospective client. MRPC 1.9(a) governs representation of a party with interests materially adverse to those of a former client. Both rules bar representation in "the same or a substantially related matter" when the parties' interests are "materially adverse." Furthermore, ABA Model Rule 1.18 bars disclosure of confidential information "except as Rule 1.9 would permit with respect to information of a former client." The primary difference between the rules is that representation is not barred by ABA Model Rule 1.18 unless "the lawyer received information from the prospective client that could be significantly harmful to that person in the matter." The scope of MRPC 1.9 is not limited in this fashion. The Court thus concludes that AP's Motion to Disqualify should be analyzed the same as a motion to disqualify pursuant to a former client relationship, with the additional requirement that the lawyer receive information that could be "significantly harmful," rather than merely confidential as required by the Sixth Circuit's three-prong *Dana Corp.* test.

FM argues that AP was never even Denenberg's prospective client because Allianz (AP's liability and property insurer), not AP, contacted Denenberg. FM cites an ethics opinion from the ABA analyzing direct adversity under ABA Rule 1.7, which governs concurrent conflicts of interest.

The opinion addresses whether an attorney representing an insurance company as a named party in an action may also represent the plaintiff in another action against a defendant insured by the client insurance company. (Docket no. 12-3 at 2.) The ABA concludes that, in general, representation of the plaintiff is not directly adverse to the client insurance company so long as the insurance company is not a named party in the second action. (*Id*.) FM contends this opinion demonstrates that the representation by Denenberg Tuffley does not create a conflict of interest simply because Denenberg previously represented AP's insurance company.

This Court disagrees with FM. The ABA's hypothetical involved concurrent representation of an insurance company in one action and a plaintiff against the insurance company's insured in an unrelated action. Because those actions were unrelated, the insurance company's only interest in the second action was economic. Economic adversity alone does not create a concurrent conflict of interest. (*Id*. at 4.)

Allianz contacted Denenberg regarding the same matter now before the Court. Allianz and AP were apparently cooperating in their defense. AP shared internal reports it drafted with Allianz, which provided them to Denenberg. Denenberg received a report from AP's engineering expert and spoke with him on the phone. FM contends there is no conflict because Denenberg never represented or prospectively represented AP in this matter, and Allianz is not a party to this case. The Court disagrees. Denenberg Tuffley's representation of FM was a conflict of interest when Denenberg communicated with Allianz. That any resulting prejudice inures to AP seems immaterial. The pertinent issue is that Denenberg's receipt of confidential information from Allianz concerning this matter created a conflict of interest and may prejudice AP's defense. Furthermore, although economic adversity alone does not create a concurrent conflict of interest, the instant conflict involves not a current client in an unrelated action, but a former prospective client in the

same action. Under the circumstances, this Court believes that Allianz's economic interest in this matter can give rise to a conflict.

The question, then, is whether Denenberg received information that was "significantly harmful" as distinguished from merely confidential as required by the Sixth Circuit's three-prong *Dana Corp.* test. Denenberg admits that he received the Riddings report, and given the nature of this material, the Court believes that it qualifies as information that could be "significantly harmful."

**B.    Waiver**

FM contends that Allianz waived any conflict through its consent. The Court agrees. Unlike ABA Model Rule 1.9(a), which requires written consent of a former client to a conflict of interest, MRPC 1.9(a) requires only that "the former client consent[] after consultation." Furthermore, this consent may be implied. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 409 (6th Cir. 2008). FM argues that Allianz gave its "express oral or implied consent," (docket no. 21 at 13), because Denenberg informed Warren Miller (Miller) of Allianz that his law firm "had already been retained as subrogation counsel by [FM] regarding" the crane collapse when Miller initially contacted Denenberg. (Docket no. 21-3 at 3, ¶ 3.) FM argues that Miller impliedly consented when he subsequently provided information to Denenberg. (Docket no. 21 at 13.) Denenberg states that during a second conversation with Miller, after Miller had provided Denenberg the Ridding's expert report, he subsequently told Miller that Allianz's insured could be a potential defendant in the case and that he should retain other counsel. (Docket no. 21-3 ¶¶ 4-5.) Denenberg claims both Miller and his superior, Brian Sheriff, stated that they had no concerns regarding this conflict of interest. (*Id.* ¶¶ 6-8.)

The Court accepts Denenberg's account that he disclosed his representation of FM to Allianz in the first conversation. The validity of the consent, then, turns on whether Denenberg sufficiently

informed Allianz "of the material respects in which the representation could have adverse effects on the interests of [Allianz]." *CenTra*, 538 F.3d at 415. The Court concludes that Denenberg's disclosure was sufficient to inform Allianz of all the potential material adverse effects arising out of the representation. The specific circumstances of this case support that conclusion. Miller was not the average person who is unfamiliar with the legal system and generally unaware of the nature and consequences of attorney conflicts of interest. Rather, he and Allianz were and are sophisticated parties that regularly engage in litigation and are intimately familiar with the ins-and-outs of insurance subrogation cases. At the time he contacted Denenberg, Miller was fully apprised of the facts, and, given his knowledge and experience, would have understood the significant likelihood that Consumers Energy Company's insurers would file a subrogation claim against the company that employed the operator of the crane – Allianz's own insured. Thus, when Denenberg informed Miller that his firm represented FM, Miller had all the information required to give fully informed and valid consent.

The remaining issue is whether Allianz's waiver was binding on AP. FM cites *American Special Risk Insurance Co. v. City of Centerline*, 69 F. Supp. 2d 944 (E.D. Mich. 1999), as support for the proposition that a waiver can bind a third party. In *American Special Risk*, several cities formed a municipal corporation, SMDA, for garbage disposal. American Special Risk Insurance (ASRI) insured SMDA. *Id.* at 948. The cities were also customers of SMDA. *Id.* SMDA was a defendant in several related suits filed by individual plaintiffs. *Id.* at 949. SMDA filed suit against ASRI for indemnification. ASRI filed suit against SMDA's member cities "on behalf of and in the name of" SMDA. *Id.* The defendant cities were represented by the law firm that represented SMDA in the related suits. *Id.* at 953. ASRI sought to disqualify defendant cities' counsel. That counsel had never represented ASRI. *Id.* The *American Special Risk* court held that disqualification was unwarranted. *Id.*

That court noted that ASRI had not identified any confidential information counsel had received from SMDA that might be detrimental to ASRI's case. *Id.* SMDA, the former client which created the conflict, expressly consented to the representation. *Id.* at 954. More significantly, SMDA sought to intervene as a defendant in the very case ASRI filed "on behalf of and in the name of" SMDA. The court denied the request to intervene because it found that "SMDA's rights will not be adversely affected by this litigation. Furthermore, under its policies of insurance with [ASRI], SMDA granted [ASRI] the right to bring an action 'in its name.' To allow the SMDA to intervene … would … place the SMDA on both sides of the litigation." *Id.* at 955.

Allianz and AP share the same insurer-insured relationship as ASRI and SMDA. Furthermore, here, as in *American Special Risk* there was an unequivocal waiver. Given the close relationship between Allianz and AP and the fact that AP was cooperating with Allianz in preparing for litigation, the Court concludes that even though Allianz did provide information to Denenberg that could be "significantly harmful," it did so with a full understanding of the implications and potential adverse effects on its interests. Because Allianz was, in a very real sense, acting for, or at least jointly with, AP, AP should be bound by the waiver.

## Conclusion

This Court admits that this was a close call. But, for the foregoing reasons, the Court will deny AP's Motion to Disqualify Plaintiffs' Attorney and Law Firm.

An Order consistent with this Opinion will be entered.

Dated: September 30, 2009    /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE